487 So.2d 138 (1986)
FALSTAFF BREWING CORPORATION
v.
CONSOLIDATED FIBRES, INC.
No. CA-4649.
Court of Appeal of Louisiana, Fourth Circuit.
April 11, 1986.
Rehearing Denied May 15, 1986.
Douglas A. Kewley, Molony, North & Hanewinckel, Metairie, for Falstaff Brewing Corp., plaintiff-appellee.
Roy C. Cheatwood, Andrew A. Braun, Jones, Walker, Waechter, Poitevent, Carrere *139 & Denegre, New Orleans, for Consolidated Fibres, Inc., defendant-appellant.
Before GULOTTA, SCHOTT and BARRY, JJ.
BARRY, Judge.
Consolidated Fibres, Inc. signed a lease on Falstaff Brewing Corporation's warehouse in September, 1981. The contract provides that Falstaff would pay the 1981 assessed property taxes while Consolidated was to pay "all increases in real property taxes ... over those assessed for the 1981 base year amount." When Consolidated drafted the agreement both parties were unaware that Falstaff had a tax exemption from 1971 to 1981 and owed no taxes for the base year.
The assessor did not have a mailing address for Falstaff so no bills were sent until November, 1983 when Falstaff was billed $35,899.50 for 1982, the same for 1983, plus $14,377.73 accrued interest. Falstaff's demands upon Consolidated to pay the $86,176.73 were refused. Falstaff paid the full amount and sued for reimbursement claiming the taxes were increases over the 1981 base year. Consolidated reconvened alleging a mutual mistake by the parties requiring reformation of the lease. Judgment was granted in favor of Falstaff.
Consolidated points out that neither party knew of the "base year" exemption and it was assumed taxes were being paid. Consolidated contends had it known that Falstaff was exempt, it would not have agreed to the provision. Consolidated maintains the understanding and intent of both parties was that Falstaff would pay 1981 taxes and Consolidated would pay future increases. Consolidated claims had it intended to pay all taxes the lease would have so specified.
Falstaff argues its intent was to predetermine its overhead when setting the rent and not have that overhead increase. Falstaff asserts the unpaid taxes and interest constitute "increases over the 1981 taxes". Falstaff contends Consolidated was simply not aware of just how low the 1981 tax base was and should have checked the public records.
Consolidated counters that it had no obligation to inspect the records prior to signing the lease. The amount of money paid by Falstaff was immaterial to Consolidated and would have no effect on Consolidated unless the property was reappraised or there was a millage increase.
Paul Kalmanovitz, Chairman of the Board of Falstaff, testified that Falstaff was completely unaware of the tax exemption and would have disclosed the exemption and made "proper condition" in the lease. He said that he generally required the lessee to pay all taxes, however, after months of negotiations he agreed to Consolidated paying only increases above the 1981 amount. In a letter to Consolidated dated November 16, 1983, Mr. John M. Schiess, Corporate Controller for Falstaff, stated:
Falstaff has never been billed for nor paid any Property Taxes on the assessment in question. We were completely unaware of the New Orleans statute which eliminated these taxes back in 1971 nor were we aware that they would be reinstated in 1982. This is as much of a surprise to us as it is to you.
Consolidated's officers confirmed they believed Falstaff was paying taxes in 1981.
Kalmanovitz testified that Falstaff's intention in executing the tax provision was:
We were going to pay taxes and your client was going to pay anything over that, over the current taxes. There's no ifs, and buts about it. I already testified so many times on it.
It is uncontested that when the agreement was negotiated both parties believed Falstaff was paying some tax, otherwise the provision would have been different.
There was a strongly negotiated, good faith agreement to share the tax burden. It was never intended for one party to pay all of the tax. Equity does not permit Falstaff to gain such a lop-sided advantage based on the admitted mutual error.
*140 The district court judgment is reversed. Plaintiff's petition is dismissed at its costs.
REVERSED.